IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HILCO, INC., :<br>:<br>:<br>Plaintiff, :<br>: CIVIL ACTION NO.<br>: 1:20-CV-4514-LMM<br>v. :<br>:<br>:<br>HARTFORD FIRE INSURANCE :<br>COMPANY, :<br>:<br>:<br>Defendant. : | |

# **ORDER**

This case comes before the Court on Defendant Hartford Fire Insurance Company's ("Hartford") Motion to Dismiss [5]. After due consideration, the Court enters the following Order:

**I.    BACKGROUND**

In this insurance-coverage action, Plaintiff Hilco alleges that its insurer, Defendant Hartford, breached the terms of a commercial insurance policy. Dkt. No. [1-1].[1] The policy was called a Special Multi-Flex Business Insurance Policy ("Policy"), and its coverage period ran from July 15, 2019 to July 15, 2020. The

---

[1] The Court draws the facts in this section from the Complaint and views them in the light most favorable to Plaintiff, the non-moving party.

Policy included a Property Choice coverage part and a Commercial General Liability coverage part. Dkt. No. [5-2] at 5.

Plaintiff alleges that it incurred losses due to the various government orders and restrictions that followed the outbreak of COVID-19. Dkt. No. [1-1]. Plaintiff describes these losses as losses to business income and increased expenses. It alleges that these losses were covered by the Policy it purchased from Defendant. Plaintiff accordingly submitted a claim under the Policy to Defendant in June 2020 claiming covered losses. Defendant denied coverage because, it asserted, Plaintiff's COVID-19-related losses were not covered losses under the Policy.

Plaintiff then filed in Gwinnett County Superior Court a case for declaratory judgment and breach of contract based upon the Policy and Defendant's denial of coverage. Id. Defendant removed the case to this Court and then moved to dismiss Plaintiff's claims entirely. Dkt. No. [5]. Plaintiff opposes Defendant's Motion to Dismiss. Dkt. No. [8]. After describing the standard that applies to Defendant's Motion, the Court turns to the merits.

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

### III.  DISCUSSION

Defendant moves to dismiss Plaintiff's case on the grounds that Plaintiff's claimed losses are not covered under the Policy. Dkt. No. [5-1]. Defendant argues that Plaintiff's claims for business-income coverage and extra-expense coverage fail as a matter of law because the Policy contains no such coverage. Id. at 16. Defendant also argues that the Policy contains a Virus Exclusion which bars Plaintiff's claims based on COVID-19-related losses. Id. at 20. Plaintiff opposes Defendant's Motion on each of these issues. Dkt. No. [8].

The Court need only address one issue to resolve this Motion: the Policy's Virus Exclusion. This exclusion reads as follows:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage:
>
> [. . .]
>
> **g. "Fungus", Wet Rot, Dry Rot, Bacteria or Virus**
>
> Presence, growth, proliferation, spread or any activity of "fungus," wet rot, dry rot, bacteria or virus.
>
> But if direct physical loss or direct physical damage to Covered Property by a "Specified Cause of Loss" results, we will pay for the resulting loss or damage caused by that "Specified Cause of Loss".[2]
>
> This exclusion does not apply:
>
> **(1)** When "fungus," wet rot, dry rot, bacteria or virus results from fire or lightning; or
> **(2)** To the extent that coverage is provided in the Additional Coverage(s) – "Fungus," Wet Rot, Dry Rot, Bacteria or Virus – Limited Coverage with respect to loss or damage by a cause of loss other than fire or lightning.

Dkt. No. [5-2] at 56, 57.

---

[2] The Policy defines "Specified Causes of Loss" as "fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; 'Sinkhole Collapse'; 'Volcanic Action'; falling objects; weight of snow, ice, or sleet; water damage; 'Sprinkler Leakage'; 'Theft'; or 'Building Glass' breakage." Dkt. No. [5-2] at 44. Plaintiff does not argue that one of these Specified Causes applies.

4

Plaintiff argues that this exclusion does not apply because the virus did not cause its loss. Dkt. No. [8] at 12. Plaintiff argues that the virus "was merely an antecedent circumstance which is not a direct cause of the loss . . . ." Id. Plaintiff alleges that its losses were rather caused by the shelter-in-place order issued by civil authorities. Id. at 13.

Georgia law governs the Court's reading of the Policy. "In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." Hays v. Ga. Farm Bureau Mut. Ins. Co., 314 Ga. App. 110, 111, 722 S.E.2d 923 (2012). "If the language is unambiguous, the court simply enforces the contract according to its terms, and looks to the contract alone for the meaning." Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co., 288 Ga. 749, 750, 707 S.E.2d 369 (2011). Courts applying Georgia law "will not strain to extend coverage where none was contracted or intended." Jefferson Ins. Co. of New York v. Dunn, 269 Ga. 213, 215, 496 S.E.2d 696 (1998) (citing Liberty Nat. Ins. Co. v. Davis, 198 Ga. App. 343, 401 S.E.2d 555 (1991)). "Georgia law requires the narrow construction of exclusions from coverage in insurance policies[.]" Ga. Farm Bureau Mut. Ins. Co. v. Smith, 298 Ga. 716, 718, 784 S.E.2d 422 (2016).

Here, Plaintiff claims to have suffered losses from the spread of a virus. Dkt. No. [1-1] at 6. There is no dispute that COVID-19 is a virus. Id. ¶¶ 22–23 (describing COVID-19 as "[t]he virus"). And Plaintiff alleges that it "has suffered significant losses of Business Income" "[d]ue to the spread of COVID-19,

5

governmental shelter-in-place orders, and other governmental recommendations and restrictions . . . ." Id. ¶ 35; id. ¶ 44 ("The spread of COVID-19, and the corresponding orders and mandates from civil authorities throughout the country requiring the suspension of businesses like Hilco's constitute physical damage to the premises and a loss that is covered under the Policy."); id. ¶ 47 ("As a result of the presence of COVID-19 and the orders of the governmental authorities, Hilco lost Business Income and incurred Extra Expense."); id. ¶ 48 ("Hilco made a claim in June of 2020 seeking coverage for Business Income Loss and Extra Expense coverage to recover for losses suffered as a result of the impacts COVID-19 had on the business."). In fact, Plaintiff claims no loss that was not caused, at least indirectly, by the virus.

The Court rejects Plaintiff's argument regarding the civil authorities because the virus either directly or indirectly caused Plaintiff's claimed losses. The Policy's plain language unambiguously excludes coverage for loss "caused directly or indirectly by . . . [the p]resence, growth, proliferation, spread or any activity of . . . [a] virus." Dkt. No. [5-2] at 56, 57. "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage[.]" Id. at 56. Several paragraphs of the complaint attribute Plaintiff's losses directly to the virus. See, e.g., Dkt. No. [1-1] ¶ 48 (claiming losses "as a result of the impacts COVID-19 had on the business").

But Plaintiff's claimed losses would be excluded from coverage even without the language in the Complaint that attributes Plaintiff's losses directly to

6

the virus. This is because the more proximate cause of Plaintiff's losses—the civil authorities' shelter-in-place orders—were direct responses to the spread of COVID-19. Plaintiff alleges as much. Id. ¶ 29 ("[M]any state and local governments enacted measures to combat the spread of the virus by declaring public health emergencies and issuing stay at home orders."); id. ¶ 31 ("Governor Kemp issued an Executive Order . . . to prevent the spread or infection of COVID-19 . . . ."); id. ¶ 46 ("In response to COVID-19 [the civil authorities] all decided to prohibit access to Hilco's premises, thus suspending their normal business activities."). And regarding losses due to the spread of a virus, the Policy provides, "Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." Dkt. No. [5-2] at 57. The government shut-down orders were simply one more step along the causal chain connecting COVID-19 to Plaintiff's alleged losses. Even if the virus did not directly cause Plaintiff's loss, it indirectly caused Plaintiff's loss, so it is excluded.

Other courts addressing virus exclusions have read the exclusions the same way as this Court, rejecting plaintiffs' efforts to avoid the exclusions by arguing that government action severed the causal link between the virus and the plaintiffs' losses. See Nahmad v. Hartford Cas. Ins. Co., No. 1:20-cv-22833, 2020 WL 6392841, at *9 (S.D. Fla. Nov. 2, 2020) ("Even if COVID-19 is not a direct cause of their losses, the complaint's allegations demonstrate that the government's civil orders were specifically enacted to address COVID-19 activity .

7

. . ."); Wilson v. Hartford Cas. Co., __ F. Supp. 3d __, 2020 WL 5820800, at *8 (E.D. Pa. Sept. 30, 2020) ("To the extent that Plaintiffs allege that the governmental closure orders are a separate cause of loss, Plaintiffs provide no explanation as to why the Civil Authority coverage would not be precluded by the virus exclusion."); Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc., 488 F. Supp. 3d 904, 908 (N.D. Cal. 2020) ("[T]he Closure Orders . . . , as the complaint repeatedly alleges, [] were issued as the direct result of COVID-19—a cause of loss that falls squarely within the Virus Exclusion."); Diesel Barbershop, LLC v. State Farm Lloyds, 479 F. Supp. 3d 353, 360–62 (W.D. Tex. 2020) ("While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 . . . that was the primary root cause of Plaintiffs' businesses temporarily closing.").

  Plaintiff's authorities to the contrary do not apply. Plaintiff argues that the virus was not a cause, but an "antecedent contributing circumstance," which is "a situation which merely sets the stage for the later event [but] is not regarded as being the proximate cause merely because it made possible the subsequent loss." Dkt. No. [8] at 15 (quoting Ovbey v. Cont'l Ins. Co., 613 F. Supp. 726, 728 (N.D. Ga. 1985)). This doctrine does not apply for two reasons. First, the virus did not "merely set[] the stage" for the shelter-in-place orders that closed Plaintiff's business; it caused them directly. And second, the Court need not find that the

8

virus was the "proximate cause" of loss because the Policy unambiguously excludes losses indirectly caused by the spread of a virus.

Accordingly Plaintiff's claims for breach of contract (Counts II & III) are **DISMISSED** based on the application of the Virus Exclusion. Plaintiff's claims for declaratory judgment (Count I) and punitive damages (Count IV), which depend upon the success of Plaintiff's breach-of-contract claims, are also **DISMISSED**.

### IV. CONCLUSION

Based upon the foregoing, Defendant Hartford's Motion to Dismiss [5] is **GRANTED**. Plaintiff's Complaint is **DISMISSED**. The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED** this 12th day of April, 2021.

*/s/ Leigh Martin May*
**Leigh Martin May**
**United States District Judge**